Gladys S. ROBERTS, Appellant,

v.

James E. ROBERTS, Appellee.

No. 12339.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 13, 1955.

Decided May 5, 1955.

Mr. Joseph C. Waddy, Washington, D. C., with whom Messrs. William C. Gardner and William B. Bryant, Washington, D. C., were on the brief, for appellant.

Mr. George E. C. Hayes, Washington, D. C., with whom Messrs. Leonard S. Hayes and John A. Shorter, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Gladys Roberts appeals from a judgment of the United States District Court for the District of Columbia, entered April 26, 1954, which granted her husband, Dr. James E. Roberts, an absolute divorce on the ground of voluntary separation from bed and board for five consecutive years without cohabitation. Two previous attempts by Roberts to obtain a divorce in this jurisdiction were unsuccessful. The history of the prior litigation is essential to an understanding of the only question presented here: whether the separation was voluntary during the statutory period relied upon by the appellee, which he describes as "being from June 26, 1947 through June 26, 1952."

After eight years of married life, the parties separated December 6, 1945. Five days later, the wife sued in the District Court for separate maintenance, and the husband counterclaimed for a limited divorce on the ground of cruelty. Judge

Pine of the District Court granted separate maintenance and dismissed the husband's counterclaim. The following is quoted from one of the findings of fact in that action:

"Plaintiff [wife] and defendant moved into the new home in September, 1945. Serious differences arose and plaintiff justifiably left the home on December 6, 1945. The next morning plaintiff sought a reconciliation with defendant and has continually sought a reconciliation with him ever since, and is still ready and anxious for a reconciliation. On the other hand, defendant has at all times rejected a reconciliation, and from the witness stand, stated that he did not love his wife and would not consider a reconciliation. He changed the locks on the house and refused to give plaintiff a key to the new lock. He also withdrew her right to obtain medicine and gasoline on his credit. Since December, 1945, the parties have lived apart without cohabitation. * * *"

The separation continued. Roberts waited for a five-year period to elapse. Sixteen days after it had run—December 21, 1950—he filed in the District Court the second suit of the series, this time seeking an absolute divorce on the ground of voluntary separation for five consecutive years without cohabitation. The wife defended, answering that the separation had been involuntary on her part; that she had at all times desired, and was still ready, willing and anxious for, a reconciliation. She testified to that effect in December, 1951, when the second suit came on for hearing. District Judge Keech dismissed the husband's complaint, holding the judgment in the first action was conclusive as to the involuntary nature of the separation from its inception until June 26, 1947, the date of Judge Pine's decree.

■ Again the husband waited for a five-year period to run. Just six days more than five years after Judge Pine's judgment—July 2, 1952—Roberts filed this third suit in the series, alleging that since "June 26th, 1947, there has been a voluntary separation from bed and board for five (5) consecutive years without any cohabitation between the said parties." In order to establish that ground for divorce it was necessary for Roberts to prove either (a) that his wife had affirmatively agreed to the separation throughout its duration, or (b) that she had silently acquiesced in it during the five-year period relied upon,[1] or (c) that, if the wife did not silently acquiesce, she actually did not in good faith manifest a desire to continue the marriage relation, thus justifying the conclusion that she had acquiesced in the separation. Bowers v. Bowers, 1944, 79 U.S.App.D.C. 146, 143 F.2d 158; Butler v. Butler, 1946, 81 U.S.App.D.C. 26, 154 F.2d 203; Martin v. Martin, 1947, 82 U.S.App.D.C. 40, 160 F.2d 20. See, generally, Uline v. Uline, 1953, 92 U.S.App.D.C. 281, 205 F.2d 870.

■ It is true, as the husband points out, that in Parks v. Parks, 1940, 73 App. D.C. 93, 116 F.2d 556, 557, we said the purpose of the five-year voluntary separation statute is "to permit termination in law of certain marriages which have ceased to exist in fact." That much-quoted expression did not, however, broaden the scope of the statute, and must not be extended so as to destroy the effect of the word "voluntary" in the statute. The District Court may put a legal end to marriages which because of long separation have ceased to exist in fact, only in those cases where the separation has been continuously voluntary on the part of both husband and wife for the statutory period. Martin v. Martin, supra.

At the trial of the present case before Judge Kirkland, Dr. Roberts was the only witness as to the voluntariness of the separation. He did not say his wife affirmatively agreed to the separation on

---

1. The spouse who resists the application may have made such slight effort at reconciliation that silent acquiescence will be held to have occurred. Boyce v. Boyce, 1946, 80 U.S.App.D.C. 355, 153 F.2d 229.

June 27, 1947, nor at any time thereafter. Nor did he testify that his wife had silently acquiesced. To the contrary, he said that she telephoned him, that she approached him in a bank lobby and at a college fraternity meeting and tried to discuss reconciliation; that he attempted to avoid contact with her at social functions because he "appreciated what was going to happen * * *." He even went so far as to tender his resignation from an organization to which she belonged, in order to avoid her. The clear implication was that he knew she would renew her conciliatory overtures whenever an opportunity arose.

The husband told of getting greeting cards from his wife on his birthdays and on holidays and special occasions. He introduced as an exhibit the following letter which she wrote him soon after the trial of the second suit before Judge Keech:

"1447 S Street, N. W.
Washington 9, D. C.
December 23, 1951

"Dear Jimmie,

"As I reflect over our recent court case, I was both surprised and pained to see you testify that the offers and attempts I have made for a reconciliation were not done in good faith. God knows that I have always been interested in your welfare and our marital happiness since I first met you in those good old days of 1928 and 1929.

"I do not just understand what you mean by the statement, 'my terms' and 'strings attached' to my desire for reconciliation. It is my earnest hope (as it has always been) for us to live a normal and happy married life. Did we not consider ourselves 'an ideal couple' and did not our mutual friends say the same thing about us?

"How about our sitting down together to discuss these unfortunate problems that have arisen in our lives within the past few years and please let's think of a basis for our future together?

"May I hear from you soon?

"Merry Christmas to you, your mother, and the rest of the family!

"As ever,

"(s) Gladys S. Roberts

"P. S. I am registering this letter to be sure you get it all right. For, our future happiness is very dear to me.

"(s) 'Glad.' "

He also introduced a copy of his long and abusive reply, which began with these words:

"Your letter of December 23rd indicates that you are as designing and calculating as ever. The mere fact that you typed, registered this letter and then requested a return receipt is proof in itself that you have some diabolic plan behind this humble gesture. * * *"

In spite of his clear statement that he would not consider reconciliation, his wife wrote again in February, 1952. This letter was not available.

Thus the husband's testimony showed beyond doubt that the wife had not agreed to the separation but, as we said in the Martin opinion [82 U.S.App.D.C. 40, 160 F.2d 22], "on the contrary had consistently and insistently attempted to induce her husband to return to her." In these circumstances a divorce could not be granted to the husband unless the efforts of the wife to bring about a reconciliation were so lacking in good faith as to justify the conclusion that she had acquiesced in the separation. That is the issue upon which the decision turned in the District Court and upon which decision depends here.

The trial judge found bad faith on the part of the wife. He seems to have based the finding on the letter from the wife, which we have quoted at length above, and on a birthday greeting card on which this message was written: "May your birthday be a very happy one. Best regards to your mother. As ever,

Gladys (Roberts)." The judge said he "would question the sincerity of that letter," apparently because it was sent by registered mail. His comment on the birthday greeting was that the word "Roberts" was put in parentheses "as though he, the Doctor, wouldn't even know who the sender of the message was."

These considerations seem to us to be insufficient to support the finding of bad faith,[2] particularly in view of the judicially found fact that for more than 18 months after the separation the wife in good faith continually sought a reconciliation, and was still ready and anxious for a reconciliation on June 26, 1947. For Judge Pine's finding makes it clear that at the beginning of the five-year period upon which the husband relies, the separation was involuntary on the part of the wife. We said in the Bowers case [79 U.S.App.D.C. 146, 143 F.2d 159], "The issue turns upon the continuing character of the separation, not its origin; but its origin is evidence of its continuing character."

Hence, the fact that the wife in good faith continually attempted to bring about a reconciliation from the beginning of the separation until June 26, 1947, gave rise to a presumption that her continued efforts during the five-year period which is critical here were also in good faith. The husband's testimony fell far short of overcoming the presumption. He showed his own intransigence, however, by characterizing his wife's friendly and even affectionate letter as proof that she had "some diabolic plan."

We are forced to conclude that the District Court's holding of bad faith on the part of the wife was not supported by the evidence and was therefore clearly erroneous. It follows that the husband failed to prove a voluntary separation for five consecutive years and that the court erred in granting a divorce. Upon remand the complaint should be dismissed.

Reversed and remanded.

---

2. The trial judge was in no better position than we are to appraise the probative effect of the letter, the birthday card and any behavior of the wife, narrated by the husband, which may have induced him to hold as he did.