Guy MAUR, formerly known as Guidi Ciavarro, Appellant,

v.

Consiglia CIAVARRO, Appellee.

No. 2396.

Municipal Court of Appeals for the District of Columbia.

Argued May 18, 1959.

Decided Sept. 18, 1959.

Hyman Smollar, Washington, D. C., for appellant.

S. Churchill Elmore, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellant sued for divorce on the ground of voluntary separation for five years.[1] His wife, a resident of Italy, was not present at trial but answered interrogatories prepared by her court-appointed counsel. The trial court dismissed the husband's complaint, and granted maintenance to the wife. On this appeal he apparently does not question the grant of maintenance, but he does assert that the trial court was in error in holding that he failed to establish a five-year voluntary separation entitling him to a divorce.

The evidence showed that the parties were married in Naples in 1932 and had two children. In 1938 he went to Rome to obtain employment. According to his testimony he asked her to accompany him but she preferred to remain in Naples, and he sent her money every month until 1940. He never saw his wife after 1938, and in 1940 he went to France and joined the Foreign Legion and was sent to Algiers. On cross-examination he admitted he joined the Foreign Legion in order to stay out of Italy because he was tired of having to send money to his wife each month. From Algiers he wrote her a card stating that his pay was only ten cents a day and he could no longer send her money. That was the last she heard from him.

He remained in the Foreign Legion until 1941 and then entered the British Army. While serving with the British Army he was in Italy for a short time and visited the town of his birth to see his brother-in-law but made no attempt to see his wife or children. He was released from the British Army in 1946 in Paris and eight months later came to the United States and has lived in the District of Columbia since 1948. In 1953 he became a citizen of the United States and changed his name from Guidi Ciavarro to Guy Maur. After coming to the United States he remarried, believing, as he testified, that his first wife was dead. Apparently this second marriage was annulled. In 1957 he filed the present action for divorce.

Appellant's contention is that, assuming an original involuntary separation, the wife by her silence and inactivity has acquiesced in the separation and "in the course of time her silent acquiescence in the separation made it voluntary in the statutory sense." Parks v. Parks, 73 App.D.C. 93, 94, 116 F.2d 556, 557. Reliance is had on the case of Buford v. Buford, 81 U.S.App. D.C. 169, 170, 156 F.2d 567, 568, where it was said: "When a separation has continued more than five years and neither party has tried to end it a divorce should be granted." If we accept that flat statement without qualification perhaps appellant was entitled to a divorce; but we think there are some qualifications to the rule. Before it can be said that a party has made no effort to end a separation there must have existed an opportunity to make such effort.

It is not evident to us what opportunity the wife had in this case to endeavor to end the separation. The husband was in Algiers in the Foreign Legion before she knew he had any intention of leaving Italy. From then on she did not know where he was and had no means of communicating with him. Her first and only communication from him was service upon her of his suit for divorce. To hold that she acquiesced in the separation because she did nothing when there was nothing she could do, would be tantamount to holding that a husband may desert his wife, hide away from her for twenty years, and then suddenly appear and demand a divorce as of right. We do not think such is the law.[2]

Appellant, in his effort to establish the wife's acquiescence in the separation, relies

---

1. Code 1951. § 16–403.

2. Cf. Nardolillo v. Nardolillo, 84 R.I. 250, 123 A.2d 141.

heavily on the fact that to the interrogatory: "Are you willing to attempt to effect a reconciliation between you and your husband," she replied: "No, I am not willing to effect a reconciliation with my husband." It is not surprising that she so answered. She had not seen or heard from him for twenty years; she had been compelled to support herself and her two children; she had information that he had married another woman; and he was demanding a divorce. Under these circumstances it is most difficult to see why she should wish a reconciliation even if such were possible. At most, her answer indicated an acceptance of a situation which had been forced upon her. There was no element of voluntariness in it. See Roberts v. Roberts, 95 U.S.App.D.C. 382, 384, 222 F.2d 408, 409, where it was said:

"It is true, as the husband points out, that in Parks v. Parks, 1940, 73 App. D.C. 93, 116 F.2d 556, 557, we said the purpose of the five-year voluntary separation statute is 'to permit termination in law of certain marriages which have ceased to exist in fact.' That much-quoted expression did not, however, broaden the scope of the statute, and must not be extended so as to destroy the effect of the word 'voluntary' in the statute. The District Court may put a legal end to marriages which because of long separation have ceased to exist in fact, only in those cases where the separation has been continuously voluntary on the part of both husband and wife for the statutory period."

Affirmed.