Helen Crosby GLENDENING, Appellant,

v.

Harold Sanford GLENDENING, Appellee.

No. 3544.

District of Columbia Court of Appeals.

Argued Oct. 19, 1964.

Decided Feb. 8, 1965.

John W. Karr, Washington, D. C., with whom Glenn R. Graves, Washington, D. C., was on the brief, for appellant.

Justin L. Edgerton, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Appellant-wife sought an absolute divorce on the ground of five years' voluntary separation without cohabitation. The trial court denied the divorce, holding she had failed to prove that the separation, although mutually voluntary in its inception, had continued to be voluntary on the part of appellee-husband for the entire critical five years prescribed by the statute. This appeal followed.

Both parties had had previous marital experience. Appellant had been divorced from her first husband by whom she had three children, now in their teens. Appellee had been divorced from his first wife by whom he had a son, now adult, and had lost his second wife by death. After a brief courtship, the parties were married in the District of Columbia on January 14, 1956, and resided here together until July 6, 1958, when, following a violent dispute, an epilogue to many months of discord, appellee left the marital abode.

Eleven days after this separation, the parties, with the advice and assistance of their personal attorneys, executed a property settlement agreement fully disposing of their mutual property rights and claims.[1] The agreement provided that since "certain circumstances and differences have arisen between them which have caused them to determine that they can no longer continue the marriage relation and cohabit

as husband and wife," the parties agree that they "shall continue to live separate and apart for the rest of their lives and each shall be free from interference, authority and control, direct or indirect by the other, as fully as if sole and unmarried. Each may reside at such place or places as he or she may select * * * [and] agrees that he or she will not in any manner disturb, or otherwise interfere with the other." After executing the agreement, appellee, then retired from active legal practice, moved to Florida, where he has continued to reside.[2] There is no dispute that the parties have remained separate and apart from bed and board, without cohabitation in any sense of the word, for an uninterrupted period of more than six years. The only question before us is whether the separation on appellee's part continued to be voluntary for the entire five-year period.

Appellee contends that after moving to Florida and reflecting on his marital problems he changed his mind about the separation and attempted to effect a reconciliation. Pursuant to this determination he wrote appellant some seventy-five letters between approximately August 1958 and November 1961 professing his love, urging her to come to Florida to visit, and making other assertions of a desire to renew their life together. On holidays, birthdays and other special occasions he sent flowers, gifts, or cards. The trial judge, in denying the requested divorce, held that these acts by appellee amounted to offers of reconciliation which were made in good faith and destroyed the voluntariness of the separation.

The District of Columbia Code provides that a divorce from the bonds of matrimony may be granted for voluntary separation from bed and board for

---

1. On the same day appellee executed a new will, still in effect, in which no provision was made for appellant, revoking distributions made in her favor under a prior will.

2. Appellee has returned to the District of Columbia on three occasions, but only in connection with divorce litigation then in progress.

five consecutive years without cohabitation.[3] Appellant suggests we should reconsider this Code provision and rule that its requirements are satisfied by proof of a life apart for five years regardless of whether one spouse has evidenced a desire to reconcile. The purpose of this Code section is to permit termination in law of marriages which have ceased to exist in fact. Parks v. Parks, 73 App.D.C. 93, 116 F.2d 556 (1940). The language of the statute has not, however, been construed so broadly as to destroy the significance of the word "voluntary" therein. Roberts v. Roberts, 95 U.S.App.D.C. 382, 222 F.2d 408 (1955); Martin v. Martin, 82 U.S.App. D.C. 40, 160 F.2d 20 (1947). To interpret the Code provision as appellant suggests would require overruling these prior decisions by courts of this jurisdiction or legislating from the bench. We reject both courses and adhere to the settled principle that the phrase "voluntary separation" in the statute means that the separation must be voluntary on the part of both parties. Maur v. Ciavarro, D.C.Mun.App., 154 A.2d 366 (1959).

As we pointed out in a recent decision,[4] where it cannot be shown that the other spouse had agreed to the separation throughout the five years or had silently acquiesced therein, the petitioning party seeking a divorce on the ground of five years' voluntary separation has the burden of establishing that the other spouse did not in good faith manifest a desire to continue the marriage. However, where the original separation occurred by agreement of *both* parties, this mutuality is evidence of its continuing voluntariness and the party contending that the separation ceased to be voluntary has the burden of proving his contention. Bowers v. Bowers, 79 U.S.App.D.C. 146, 147, 143 F.2d 158, 159 (1944).

The question of the continuing voluntariness of a separation is generally a question of fact for the trial judge. Scott v. Scott, D.C.Mun.App., 147 A.2d 449 (1959). So, too, is the question of good faith in tendering an offer of reconciliation. de Parata v. de Parata, D.C.App., 200 A.2d 191 (1964). While it is not within appellate authority to try factual issues anew, we are empowered to determine whether there is sufficient competent evidence in the record to support the findings and conclusions of the trial judge. We have authority to set aside factual determinations, however, only if they are clearly so erroneous or manifestly wrong as to demand a reversal. Achorn v. Achorn, D.C.Mun.App., 168 A.2d 399, 400 (1961). As the Supreme Court set forth in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

We turn now to the case before us to see if the trial finding that appellee's offers of reconciliation were made in good faith was clearly erroneous. Appellee's overtures toward reconciliation are found principally in the letters he wrote to appellant. However, this array of correspondence must be assessed in the light of other pertinent facts. Not only did appellee execute a written agreement settling all mutual property rights and claims of the parties and providing in clear language that they should live separate and apart for the rest of their lives, but he also accepted and retained all benefits thereunder[5] and promptly thereafter departed for Florida where he still resides. During his period of correspondence with appellant, he also cor-

3. D.C.Code 1961, § 16–904(a) (3) (Supp. IV 1965).

4. Henderson v. Henderson, D.C.App., 206 A.2d 267, decided January 14, 1965.

5. Appellee appears to take an inconsistent stand as to the settlement agreement. While charging he was coerced into signing it, he retained the benefits under it— relief from support and maintenance and

responded with his mother until her death. and with his son. He neither made nor kept copies of these letters. Available at trial, however, were copies of letters written by appellee to appellant's former guardian, and to her teen-age daughters. But the letters available did not constitute the entirety of such correspondence, as, admittedly, he retained copies of only those letters in which he related his version of the marital difficulties. In our view the letters are nothing more than self-serving statements which cannot be equated with a good-faith offer to reconcile and should not be evaluated without reference to other facets of appellee's conduct. More important, these letters do not reveal an unconditional request for reconciliation but contain many passages indicating the need on the part of appellant to comply with certain conditions as detailed by him. While they profess desires to reconcile, they lack corroboration by conduct consistent with a sincerity of purpose and intent.

Against the evidence produced by appellee—his own statements concerning his subjective attitude, his profusion of carefully-documented correspondence (keyed and indexed, by his own admission, according to what he considered "significant" for trial purposes), and the detailed list of gifts, flowers and fruits he sent on special occasions—we are faced with certain facts which, in our opinion, vitiate the good faith of his offers of reconciliation. During the five-year period appellee maintained his

home in Florida while appellant remained in the District of Columbia. Each established an individual pattern of life—separate homes, separate friends, a completely separate existence. During this time, although present in Washington three times in connection with divorce litigation, appellee never displayed sufficient interest to personally approach appellant in an earnest effort to work out their difficulties and establish a realistic basis for the resumption of their life together. As appellee was the one attempting reconciliation, he had the duty to seek appellant out. The closest he came to this was once forwarding a check for $60 to appellant to partially defray her expenses for a trip to Florida, which she promptly returned. This attempt fell short of what was required of him. It would have been more in keeping with his professed desires to reconcile if he had come to see her in Washington. While no one of these circumstances considered alone would be sufficient to taint his offers with bad faith, when considered *in toto* they dispel any appearance of an honest, unmarshalled effort by a loving husband to attempt in good faith to gain a wife's consent to a resumption of their married life.

■ Because of the particular facts of this case, we are in equally as good a position as the trial judge to appraise the probative value and effect of the husband's correspondence, the seasonal gifts by him, and his behavior both before and after their separation.[6] We conclude that the circumstances under which the offers were

payment of attorney fees for the wife, acceptance and retention of $5,500 and a Chevrolet convertible, and the establishment of a separate residence and a separate life miles apart from appellant. Any charge of coercion is dispelled by the fact that before appellee executed the agreement, he personally reviewed its terms and penciled in certain provisions of his own which were ultimately incorporated into the agreement. This would indicate at least that the bargaining was at arm's length and at most that he, not appellant, dominated the negotiations.

6. See, Roberts v. Roberts, 95 U.S.App. D.C. 382, 222 F.2d 408 (1955), where our Circuit Court of Appeals, passing upon the question of good faith of offers for reconciliation, overturned the trial judge's finding that these offers had been made in bad faith, saying:
"The trial judge was in no better position than we are to appraise the probative effect of the letter, the birthday card and any behavior of the wife, narrated by the husband, which may have induced him to hold as he did. 95 U.S.App.D.C. at p. 385, n. 2, 222 F.2d at p. 411.

made negative any reasonable probability that they would be faithfully carried out. It was appellee's responsibility to rebut the presumption that the separation, voluntarily initiated by both parties, remained a voluntary one on his part throughout the critical five years. The self-serving declarations contained in his carefully drafted letters to appellee, unsupported by persuasive corroborative conduct on his part, were inadequate for this purpose. The actions of appellee tended more to refute than to corroborate his seemingly good faith offers to reconcile.

We have a definite and firm conviction from a careful appraisal and critical evaluation of all the evidence that the finding by the trial judge that appellee had in good faith sought a reconciliation and thus destroyed the voluntariness of the separation of the parties was clearly erroneous and the judgment must be reversed with directions to grant an absolute divorce to appellant on the ground sought.

One other point was raised by this appeal. Appellant's motion below for allowance of counsel fees and costs was denied by the trial judge on the basis of the separation agreement which precluded such demands. In LeBert-Francis v. Le Bert-Francis, D.C.App., 194 A.2d 662, 663–664 (1963), we said:

> "[One] who attacks the validity of such an agreement has the burden of proving its invalidity. In this day and time we see no valid reason why when a husband and wife realize their marriage has come to an end and determine to go their separate ways, they may not competently enter into a binding agreement settling all questions between them as to property rights and support. * * *"

Such agreements are to be encouraged and, when made, should be enforced as long as there is no fraud, duress or concealment. Travis v. Travis, D.C.App., 203 A.2d 173, 175 (1964). We find no support in the record of the present case that the settlement agreement was not fairly and voluntarily made and intended as a complete and final settlement of all claims between the parties. The trial judge's disposition of appellant's motion was therefore proper.

That portion of the judgment denying the absolute divorce is reversed with directions to grant an absolute divorce to appellant;

That portion of the judgment denying attorney fees and costs is affirmed.