Harold E. SMITH, Appellant,

v.

Lola Carpenter SMITH, Appellee.

Nos. 4664, 4755, 4807.

District of Columbia Court of Appeals.

Argued June 30, 1969.

Decided Sept. 17, 1969.

Raymond Godbersen, Washington, D. C., for appellant.

Joseph D. Di Leo, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and FICKLING and NEBEKER, Associate Judges.

FICKLING, Associate Judge.

These are three cases consolidated on appeal in which appellant (husband) appeals from (1) the dismissal of a maintenance action, (No. 4664); (2) the judgment denying an annulment or a divorce, (No. 4755); and (3) a contempt order for failure to comply with a maintenance order, (No. 4807).

The parties began this litigation in 1965 when appellee (wife) brought an action for separate maintenance which resulted in an order directing appellant (husband) to maintain mortgage payments on the marital home, in which the wife still lived, and to pay $10 every two weeks for support. No appeal was taken from this order.

Over a year later, appellant filed a motion to modify, vacate, and dismiss the maintenance order on the ground that there was no valid marriage between the parties. The trial court overruled the motion without prejudice to the rights of the parties in the then pending action for an annulment or divorce, and then later dismissed the maintenance action.

## Case No. 4664

■ The trial court's dismissal of the maintenance action was premature in that the formal order in the annulment action had not yet been entered, although a trial on the merits had been held and oral findings of fact and conclusions of law had been made. Since the rights of the parties were fully adjudicated in the annulment action (No. 4755), appellant was not prejudiced by the dismissal. Accordingly, we affirm the order of dismissal.

## Case No. 4755

After a trial on the merits, appellant was denied an annulment or a divorce and the order for maintenance entered in August 1965 was continued.

It was established at trial that the parties were first married in New York City on June 21, 1944. Appellant was in the armed services at the time and was soon sent overseas. Upon his return the parties participated in a second ceremonial marriage, also in New York City, on February 3, 1946, since appellant's divorce from his previous wife had not become final at the time of the 1944 ceremony. Thereafter, the parties resided in the District of Columbia. In June 1965, the appellant moved out of the home because of marital difficulties. He claimed that he feared physical harm because of previous assaults upon him, which the appellee denied.

■ Appellant first contends that the trial court erred in denying him an annulment. He claims that neither of appellee's two prior marriages had been terminated by an annulment or divorce and, therefore, his marriage to appellee is void. We disagree.

■ It is undisputed that appellee married one John Michael, Jr., on September 26, 1928, at Spartanburg, South Carolina. Appellee testified that this marriage was annulled in South Carolina, although she had never seen a court order to that effect. Appellant's only "evidence" to the contrary was his own testimony that he had searched the records of *New York City* and had found no record of any divorce or annulment between appellee and Michael. It has been held that the failure of a record search to disclose that a divorce had been obtained was insufficient to rebut the presumption that the *impediment* of a prior marriage had been removed. Wheeler v. Terrell, 99 U.S.App.D.C. 168, 238 F.2d 29 (1956), cert. denied, 352 U.S. 1018, 77 S. Ct. 581, 1 L.Ed.2d 557 (1957); Harsley v. United States, 88 U.S.App.D.C. 150, 187 F.2d 213 (1951). Obviously, that result is even more compelling where the records of the wrong jurisdiction were searched. Thus we find that appellant has failed to sustain his allegation that appellee's marriage to Michael was never terminated.[1]

■ Appellee's second marriage was to a Waldo Jones on June 21, 1930, at New York City. Again, appellant relied on his statement that the record search failed to disclose any annulment or divorce between appellee and Jones. Although that statement alone would be insufficient to prove

1. "A marriage proved to have taken place is presumed to be valid until the contrary is proved. Hence a death or divorce necessary to remove the impediment of a prior marriage is presumed * * *. While the presumption may be rebutted, the rebutting evidence must be strong, distinct, satisfactory, and conclusive." Harsley v. United States, 88 U.S.App.D.C. 150, 151, 187 F.2d 213, 214 (1951). New York has the same rule. See Brown v. Brown, 51 Misc.2d 839, 274 N.Y.S.2d 484 (1966).

that there was an impediment to his own marriage to appellee,[2] her own testimony clearly established that formal proceedings were never instituted to terminate her marriage to Jones. She testified, however, that Jones was already married when he married her, and that Jones admitted that he had another wife when confronted with this fact.

Under New York law, a marriage in that state is absolutely void if one of the parties to the marriage already has a spouse who is living and undivorced. Brown v. Brown, *supra*. Thus, since Jones had a living wife at the time, his marriage to appellee in 1930 was void, and therefore she was free to marry appellant.

Therefore, the trial court correctly held that appellant was not entitled to an annulment.

Appellant also contends that if his marriage was valid, the trial court erred in not granting his motion for an absolute divorce on the ground of voluntary separation without cohabitation for one year. D.C. Code, § 16–904(a). The question of the voluntariness of the separation is one for the trier of the facts, and we cannot set aside such a finding unless it is clearly erroneous; *i. e.,* when the appellate court, upon reviewing all the evidence, is left with the definite conviction that a mistake has been made. Glendening v. Glendening, D.C.App., 206 A.2d 824 (1965). We feel that the judgment was plainly wrong and that a mistake was made in the instant case. D.C.Code, § 17–305(a).

■ The record indicates that the initial separation was not mutually voluntary but constituted desertion by the appellant. However, even if that is so, the nature of the initial separation is not determinative of the issue. Bowers v. Bowers, 79 U.S. App.D.C. 146, 143 F.2d 158 (1944); Henderson v. Henderson, D.C.App., 206 A.2d 267 (1965). Parks v. Parks [3] holds that an involuntary separation may ripen into a voluntary one by the action of the parties.

■ It is clear that appellant has never desired a reconciliation. The issue before the trial court was whether the separation had become voluntary on the part of appellee. We hold, as a matter of law, that it has. Several days after appellant moved from the marital abode, appellee filed suit for separate maintenance. Appellee's pleadings in that action consisted of a motion and affidavit prepared on D.R. Form 4, entitled "Motion and Affidavit" [4] (D.C. C.E. General Sessions Forms, form 74). Question 16 of that form asked, "Are you agreeable to a reconciliation?" Appellee's response to that question was "No."

■ Appellee's response was a judicial admission and was admissible into evidence in the divorce case. 29 Am.Jur.2d Evidence § 616 (1967). The record shows that the trial court had actual notice of the pleadings in the maintenance suit, referred to those pleadings in the instant case, and considered the instant case to include the maintenance action. Under the circumstances, the trial court erred in not considering appellee's statement that she did not want a reconciliation.

■ Thus, appellee had admitted that the separation had become voluntary and, since more than one year had elapsed between the date of the pleadings in the maintenance suit and the filing of the complaint for divorce, appellant was entitled to the relief he sought unless it were shown that the separation had ceased to be voluntary during the critical period. *Glenden-*

---

2. Wheeler v. Terrell, *supra.*

3. 73 App.D.C. 93, 116 F.2d 556 (1940).

4. The rules of the Domestic Relations Branch provide in pertinent part:
   Rule 2(e):

Whenever appropriate, all papers submitted to the Court shall be in the form set out in the appendix to these rules.
Rule 3(b):
   All hearings for * * * maintenance * * * shall be initiated by motion and affidavit.

*ing, supra.* And, since the separation had become voluntary, the burden was on appellee, as the party challenging the continuing voluntariness, to show that she had changed her mind and wished a reconciliation. Buford v. Buford, 81 U.S.App.D.C. 169, 156 F.2d 567 (1946); *Bowers, supra; Glendening, supra.* This, appellee failed to do. Her only evidence in this regard was that she had called appellant approximately twelve times to talk to him. Although this statement was in response to her counsel's question, "Did you ever ask [appellant] to come back?", she did not testify why she wanted to talk with him or when these calls were made; *i. e.,* were they made within the pertinent one year period? We find nothing in the record which would indicate that either party sought a reconciliation at anytime. Since the separation had ripened into a voluntary one, it was error not to grant the absolute divorce.

In view of our holding, we remand this case to the trial court for consideration of division of property rights and to reconsider appellee's right to future support. We do not find the award of $750 for appellee's counsel fees excessive.

### Case No. 4807

Appellant was held in contempt for failure to comply with the court's maintenance and support order filed February 8, 1968.

He complains, first, that the order cited in the margin [5] is directed to the wrong party.

■ It is apparent from the record that the court intended that the order be directed to the plaintiff-husband (appellant) and not to the defendant-wife (appellee). The court's findings and conclusions, made at the close of the evidence, clearly establish that there was a clerical error in the judgment. However, appellant was in no way prejudiced or misled by the error. Therefore, we correct the order of February 8, 1968, in Civil Action No. D–1466–67, by substituting the words "That the plaintiff be" for the words "That the defendant be" in each of the paragraphs set forth in the margin. Cf. Brown v. Moore, 247 F.2d 711, n. 2 (3rd Cir. 1957) cert. denied, 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957).

■ Appellant next contends that the trial court did not have jurisdiction to enter a finding of contempt and to order him committed, since it lost its jurisdiction over the matter with the filing of the appeal of the February 8th order. The same contention was also raised in Gullet v. Gullet, 85 U.S.App.D.C. 12, 174 F.2d 531 (1949), and the court rejected it simply stating, "With respect to this contention it is enough to point out that the appellant did not obtain a stay on appeal by executing a supersedeas bond as permitted by Rule 73(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A." Rule 73(a) of the Court of General Sessions provides the same procedure for staying an order as does the Federal Rule relied on in *Gullet,* and we perceive no reason why the same rationale should not apply.

■ Appellant's contention that he could not be imprisoned for failure to make mortgage payments on the *marital abode,* in which appellee still lives, is without merit. Such payments may constitute maintenance for the wife. Cf. Pincus v.

---

5. That order read in pertinent part:

 1. That the *defendant* be, and *he* hereby is directed to pay the house note on 4412–17th Street, Northwest, Washington, District of Columbia, when and as same becomes due in the amount of $164.00 a month, or such amount as may become due do to nominal increases on said note.

 2. That the *defendant* be, and *he* is directed to pay to the * * * Clerk of the Domestic Relations Branch of the District of Columbia Court of General Sessions on behalf of the *defendant,* for *her* support and maintenance, the sum of Ten ($10.00) Dollars on each and every pay day, which is every two weeks. (Emphasis supplied.)

Pincus, D.C.App., 197 A.2d 854 (1964); D.C.Code, § 16-916.

Finally, appellant contends that the trial court erred in failing to make any finding as to his financial ability to make payments pursuant to the order. We agree.

Because appellant had failed to show any evidence of changed circumstances since the issuance of the original maintenance order, that order was permitted to stand. However, this does not mean that the trial court may dispense with a finding of financial ability to comply with its order before finding him in contempt. Truslow v. Truslow, D.C.App., 212 A.2d 763 (1965). Such a finding is an essential prerequisite if a person is to be imprisoned to coerce compliance and, since the trial court filed to make such finding, its order of commitment must be reversed. Lundregan v. Lundregan, 102 U.S.App.D.C. 259, 252 F.2d 823 (1958); *Truslow, supra.*

We do not find it necessary to reach the other claimed errors in view of our disposition of these cases.

No. 4664—Affirmed.

No. 4755—Remanded with instructions to enter judgment for absolute divorce for appellant and for further hearing on property rights and support for appellee.

No. 4807—Reversed.